**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| TYLER RESEARCH CORPORATION,<br>Plaintiff,<br>v.<br>ENVACON, INC.,<br>KIERAN BOZMAN,<br>and<br>JKKB HOLDINGS CORPORATION,<br>Defendants. | Civil Action No. 4:19-CV-00010-JVB-JEM<br><br>JURY TRIAL DEMANDED |

# FIRST AMENDED COMPLAINT

Plaintiff, Tyler Research Corporation ("Plaintiff" or "TRC"), hereby alleges the following against Defendants Envacon, Inc. ("Envacon"), Kieran Bozman ("Bozman"), and JKKB Holdings Corporation ("JKKB" and, collectively with Envacon and Bozman, the "Defendants"):

## NATURE OF THE ACTION

1. This is an action for patent infringement of U.S. Patent No. 6,273,053 ("the '053 Patent"), entitled Engine Shutdown Valves, arising under the patent laws of the United States, Title 35, U.S. Code. A true and correct copy of the '053 Patent is attached hereto as Exhibit 1.

## THE PARTIES

2. TRC is a corporation organized under the laws of the Commonwealth of Pennsylvania with its principal place of business located at 10328 73 Ave NW, Edmonton, AB T6E 6N5, Canada.

3. Envacon Inc. is Canadian corporation having a principal place of business located at 9204-41 Avenue NW, Edmonton, AB, T6E 6R7, Canada.

4. Bozman is an adult individual residing at #55 1130 Falconer Road NW, Edmonton, AB, T6R 2J6, Canada.

5. JKKB is an Alberta corporation with a registered address at #55 1130 Falconer Road NW, Edmonton, AB, T6R 2J6, Canada. JKKB owns 50% of the shares of Envacon.

6. Bozman is a director of both Envacon and JKKB. Through his corporation, 854245 Alberta Ltd., Bozman owns 90% of the shares of JKKB.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a), as well as § 1367(a).

8. Upon information and belief, this Court has personal jurisdiction over each of the Defendants because, they have each committed or participated in acts of patent infringement and/or actively induced such acts of patent infringement, and committed other torts giving rise to this action, all within this District.

9. Upon information and belief, Envacon has manufactured infringing diesel engine shut off valves covered by one or more claims of the ’053 Patent in this District for a customer at its facility located in Lafayette, Indiana.

10. Upon information and belief, Bozman has an active, hands-on role in Envacon's operations and has personally authorized and participated directly in Envacon's infringement in this District by manufacturing such infringing diesel engine shut off valves in this District for Envacon's customer at its facility in Lafayette, Indiana. And as an owner of Envacon (through JKKB), Bozman stands to benefit from his decision to manufacture such infringing diesel engine shut off valves.

11. Upon information and belief, JKKB, with knowledge of the '053 Patent and of TRC's exclusive manufacturing rights thereunder, has actively induced infringement of the '053 Patent by granting an unauthorized license to Envacon to manufacture such infringing diesel engine shut off valves in this District for Envacon's customer at its facility in Lafayette, Indiana.

12. Defendants have also conspired to tortiously interfere with TRC's worldwide exclusive license to manufacture diesel engine shut off valves to TRC's detriment.

13. As set forth more fully below, TRC holds the exclusive right to manufacture diesel engine shut off valves. This exclusive right to manufacture extends worldwide, and within the United States this exclusive right is embodied in the '053 Patent.

14. Defendants have purposefully availed themselves of the privilege of doing business in this District and, in doing so, have committed acts of infringement and other tortious acts in this District in violation of TRC's exclusive manufacturing rights.

15. Venue is proper within this District under 28 U.S.C. § 1391(c)(3) as interpreted by *Brunette Machine Works, Ltd. v. Kockum Industries, Inc.*, 406 U.S. 706 (1972) and *In re HTC*, No. 2018-130, slip op. at 7 (Fed. Cir. May 9, 2018) as Defendants are not resident in the United States so that venue may lie in any District.

## THE EXCLUSIVE LICENSE

16. On November 11, 1999, TRC entered into an exclusive license agreement with Joseph Krepela ("Krepela") and Bozman (the "Exclusive License"). According to the recitals set forth in the Exclusive License, Bozman and Krepela were engaged in the design and development of innovative kinds of diesel engine shut off valves (the "Shut Off Valves"), and wished to grant TRC the exclusive right to manufacture the Shut Off Valves. *See* Exclusive License at 1, a true and correct copy of which is attached hereto as Exhibit 2.

17. According to the Exclusive License, Bozman and Krepela agreed that, following the completion of the design and development of the Shut Off Valves, TRC "shall have the exclusive right to manufacture the Shut Off Valves." *See* Exclusive License at ¶ 4.

18. Bozman and Krepela completed the design and development of the Shut Off Valves with the assistance of TRC, and TRC's exclusive right to manufacture the Shut Off Valves thereby became effective pursuant to the terms of the Exclusive License. *Id.*

19. Notably, the Exclusive License granted by Bozman and Krepela to TRC is not limited geographically in any respect and, by its express terms, TRC's exclusive right to manufacture "shall be in force so long as any patent rights of the Licensors in reference to the Shut Off Valves design and development pursuant to the terms of this Agreement are still subsisting." *See* Exclusive License at ¶ 6. Thus, according to its terms, the Exclusive License granted to TRC the worldwide exclusive right to manufacture Shut Off Valves. In countries in which patent protection has been secured (such as the United States), the Exclusive License granted to TRC constitutes an exclusive license to manufacture Shut Off Valves under such patents.

20. As consideration for the Exclusive License, TRC assisted in the development of the Shut Off Valves, and provided employment to both Bozman and Krepela during the course of the development of the Shut Off Valves. *See* Exclusive License at ¶ 2.

21. Pursuant to paragraph 6 of the Exclusive License, TRC's exclusive right to manufacture Shut Off Valves worldwide, and to manufacture Shut Off Valves in the United States under the '053 Patent, continues in force.

## THE PATENT-IN-SUIT

22. According to the Exclusive License, Bozman and Krepela agreed to use their best efforts to apply for patent protection in Canada and the United States for the Shut Off Valves. *See* Exclusive License at ¶ 1.

23. On March 2, 2000, Bozman and Krepela assigned their rights in the Shut Off Valves, including their rights under the Exclusive License, to JKKB, and JKKB took assignment of such rights with actual knowledge that such rights were encumbered by Bozman's and Krepela's grant of worldwide exclusive manufacturing rights to TRC.

24. On March 3, 2000, JKKB filed for patent protection for the Shut Off Valves in the United States and Canada.

25. By virtue of the Exclusive License, which encumbered the transfer of worldwide exclusive manufacturing rights in the Shut Off Valves from Bozman and Krepela to JKKB, the US and Canadian patent applications for the Shut Off Valves were similarly encumbered.

26. On August 14, 2001, the U.S. Patent and Trademark Office issued the '053 Patent to JKKB.

27. By virtue of the Exclusive License, which encumbered the transfer of worldwide exclusive manufacturing rights in the Shut Off Valves from Bozman and Krepela to JKKB as well as the patent applications on the Shut Off Valves, the ’053 Patent issued to JKKB with TRC holding the exclusive license to manufacture Shut Off Valves in the United States under the ’053 Patent.

28. According to current USPTO records, all maintenance fees due in connection with the ’053 Patent have been timely paid and, as a result, the ’053 Patent continues in force.

## MANUFACTURE OF THE SHUT OFF VALVES

29. Pursuant to the Exclusive License, during the development of the Shut Off Valves from 1999 until 2001, and then from 2001 until 2004, TRC exclusively manufactured the Shut Off Valves, including:

(a) sourcing raw materials;

(b) machining components; and

(c) assembling, testing, and packaging the completed Shut Off Valves.

30. During the time TRC performed these manufacturing services, Envacon marketed and sold Shut Off Valves provided to Envacon by TRC, and for which Envacon paid TRC’s parent corporation – Tyler Research Instruments Corporation (“TRIC”) – at the direction of TRC, for TRC’s performance of its manufacturing services.

31. By 2004, pursuant to the Exclusive License, TRC decided to outsource some machining of parts that it had been doing as part of its manufacturing services, and Envacon performed these steps under the oversight, direction, and control of TRC. TRC continued to

oversee and direct overall manufacturing of the Shut Off Valves, and Envacon continued to pay TRIC, at TRC's direction, for the TRC's manufacturing services.

32. From Envacon's incorporation on November 23, 1999, until April 16, 2011, Envacon and TRC operated out of the same premises at 10328-73 Avenue, Edmonton, Alberta (the "Premises").

33. TRC's oversight, direction, and control over the manufacture of the Shut Off Valves, included:

(a) assuring the plant-wide quality of the manufacturing at the Premises;

(b) maintaining the machine shop at the Premises;

(c) providing all standard tooling for manufacturing at the Premises;

(d) advising and directing Envacon, as necessary, on the use of manual and test equipment at the Premises; and

(e) assuring safe operation of the machine shop at the Premises.

34. Throughout the time that Envacon was located at the Premises, TRC was able to maintain oversight, direction, and control over Envacon's involvement in the manufacturing of Shut Off Valves pursuant to TRC's rights under the Exclusive License.

**DEFENDANTS' INFRINGEMENTS AND OTHER TORTIOUS CONDUCT**

35. On April 16, 2011, Envacon abandoned the Premises without notice to TRC.

36. Without TRC's oversight, direction, and control over the manufacture of Shut Off Valves, Envacon was no longer authorized by TRC to manufacture Shut Off Valves.

37. Upon information and belief, Envacon has manufactured Shut Off Valves in this District which infringe at least Claims 4 and 14 of the '053 Patent.

38. Upon information and belief, the Shut Off Valves that Envacon has manufactured in this District infringe Claim 4 of the ’053 Patent as they comprise:

(1) a housing defining an air flow through passage (*see* schematic drawing of Envacon Shut Off Valve, a true and correct copy of which is attached hereto as Exhibit 3, at elements 5 and 12);

(2) a gate slidable in the housing from a position in which the air flow through passage is open to a position in which the air flow through passage is closed (*see* Exhibit 3 at elements 5 and 12);

(3) a spring mechanism mounted on the housing in a position that urges the gate to the closed position (*see* Exhibit 3 at element 9);

(4) a latch remotely mounted away from the housing having a latch position and a release position (*see* highlighted text of Envacon website, a true and correct copy of which is attached hereto as Exhibit 4);

(5) an actuator for the latch, the actuator being operable to move the latch from the latch position to the release position (*see* Exhibit 3 at element 14); and

(6) a flexible member connected between the latch and the gate to restrain the gate from being urged to the closed position by the spring member when the latch is in the latch position and to release the gate when the latch is in the release position (*see* highlighted element on Exhibit 3).

39. Upon information and belief, the Shut Off Valves that Envacon has manufactured in this District also infringe Claim 14 of the ’053 Patent as they comprise:

(1) a housing defining an air flow through passage wherein the housing comprises a first sleeve and a second sleeve, and respective first and second extensions on the gate are received by the first and second sleeves (*see* Exhibit 3 at elements 5 and 12);

(2) a gate mounted for motion perpendicular to the flow through the air flow through passage wherein the gate is slidable in the housing from a position in which the air flow through passage is open to a position in which the air flow through passage is closed (*see* Exhibit 3 at element 13);

(3) a spring mechanism mounted on the housing in a position that urges the gate to the closed position wherein the spring mechanism comprises first and second springs, a first spring being mounted in the first sleeve and engaged with the first extension to urge the gate closed and a second spring being mounted in the second sleeve and engaged with the second extension (*see* Exhibit 3 at elements 7-9);

(4) a latch remotely mounted away from the housing having a latch position and a release position wherein the latch comprises a spool that the flexible member (referenced below) at least partly encircles, the spool having a shoulder, and a spindle engaged with the shoulder in the latch position and disengaged from the shoulder in the release position, the spindle being actuated by the actuator (*see* highlighted text of Exhibit 4);

(5) an actuator for the latch, the actuator being operable to move the latch from the latch position to the release position (*see* Exhibit 3 at element 14); and

(6) a flexible member selected from the group consisting of wire, cable, and chain connected between the latch and the gate to restrain the gate from being urged to the closed position by the spring member when the latch is in the latch position and to release the gate when the latch is in the release position (*see* highlighted element on Exhibit 3).

40. Upon information and belief, Bozman has an active, hands-on role in Envacon's operations and has personally authorized and participated directly in Envacon's manufacture of Shut Off Valves in this District which infringe at least Claims 4 and 14 of the '053 Patent according to the standard set forth in *Dangler v. Imperial Machine Co.*, 11 F.2d 945, 947 (7th Cir. 1926).

41. While Envacon separately manufactures both Shut Off Valves and remotely mounted latches, the incorporation and installation by Envacon (with the personal participation of Bozman) of Shut Off Valves having remotely mounted latches in customers' products in Indiana (and elsewhere) constitutes "manufacture" of Shut Off Valves falling within the scope of Claims 4 and 14 of the '053 Patent. *See* Declaration of Keiran Bozman, Dkt. 17-1, at ¶ 14.

42. Upon information and belief, JKKB has conspired with Envacon to deprive TRC of its worldwide exclusive manufacturing rights under the Exclusive License. Acts taken in furtherance of the common design include JKKB's grant to Envacon of an unauthorized license to manufacture Shut Off Valves, and Envacon's manufacture of Shut Off Valves in violation of the Exclusive License.

43. Upon information and belief, Bozman has participated in the aforesaid conspiracy between JKKB and Envacon in furtherance of the common design by personally authorizing and participating directly in JKKB's grant to Envacon of an unauthorized license to manufacture Shut Off Valves and in Envacon's manufacture of Shut Off Valves in violation of the Exclusive License.

44. Upon information and belief, Bozman and Envacon have also tortiously interfered with TRC's contractual relationship with JKKB under the Exclusive License through Envacon's

manufacture of Shut Off Valves in violation of the Exclusive License and Bozman's personal participation therein.

45. Upon information and belief, Defendants have also conspired to tortiously interfere with TRC's contractual relationship with JKKB under the Exclusive License through JKKB's grant to Envacon of an unauthorized license to manufacture Shut Off Valves, Envacon's manufacture of Shut Off Valves in violation of the Exclusive License, and Bozman's personal participation therein.

## COUNT I – PATENT INFRINGEMENT

46. Plaintiff repeats and incorporates by reference each preceding paragraph as if fully set forth herein.

47. The '053 Patent is currently in force and owned by JKKB subject to the exclusive manufacturing license granted to TRC in the Exclusive License.

48. The exclusive manufacturing license to TRC – which, in the United States, constitutes an exclusive manufacturing license under the '053 Patent – provides TRC with standing to sue for the infringing manufacture of goods covered by the '053 Patent. Insofar as the patent holder, JKKB, is also a party to this action, TRC would not be enforcing its rights without the patent holder also joined as a party to the action.

49. Upon information and belief, Envacon has infringed TRC's exclusive manufacturing rights by manufacturing Shut Off Valves having remotely mounted latches which infringe at least Claims 4 and 14 of the '053 Patent for at least one Envacon customer at its facility in Lafayette, Indiana.

50. Upon information and belief, Bozman personally authorized and participated directly in Envacon's manufacture of Shut Off Valves having remotely mounted latches which infringe at least Claims 4 and 14 of the '053 Patent for at least one Envacon customer at its facility in Lafayette, Indiana.

51. Upon information and belief, JKKB, with knowledge of the '053 Patent and of TRC's exclusive manufacturing rights thereunder, has actively induced infringement of the '053 Patent by granting to Envacon an unauthorized license to manufacture infringing Shut Off Valves. JKKB knew or should have known that its actions would induce direct infringement by others – namely Envacon and Bozman – and intended that its actions would induce direct infringement by them.

52. As a direct and proximate result of Envacon and Bozman's direct infringement of TRC's exclusive manufacturing rights under the '053 Patent, and of JKKB's indirect infringement by inducement, TRC has been and continues to be damaged.

53. Defendants have committed these acts of infringement without license or authorization.

54. As a result of Defendants' infringement of the '053 Patent, TRC has suffered monetary damages and is entitled to recover from Defendants for damages incurred by TRC as a result thereof in an amount adequate to compensate for Defendants' past infringements to be proven at trial, together with interest and costs.

## **COUNT II – BREACH OF CONTRACT**

55. Plaintiff repeats and incorporates by reference each preceding paragraph as if fully set forth herein.

56. TRC has performed under the Exclusive License by assisting in the development of the Shut Off Valves, and by providing employment to both Bozman and Krepela during the course of the development of the Shut Off Valves.

57. JKKB has breached the Exclusive License by actively inducing infringement of the ’053 Patent by Envacon (though Bozman) to manufacture infringing Shut Off Valves. JKKB’s acts of active inducement constituting a breach of the Exclusive License include JKKB’s grant to Envacon of an unauthorized license to manufacture infringing Shut Off Valves.

58. As a result of JKKB’s breach, TRC has been and continues to be damaged.

**COUNT III – TORTIOUS INTERFERENCE**

59. Plaintiff repeats and incorporates by reference each preceding paragraph as if fully set forth herein.

60. Upon information and belief, Envacon and Bozman have tortiously interfered with TRC’s contractual relationship with JKKB under the Exclusive License through Envacon’s manufacture of Shut Off Valves and through Bozman’s personal participation therein.

61. Upon information and belief, Envacon’s and Bozman’s unlawful acts of infringement were undertaken intentionally, with knowledge of the Exclusive License, and without a legitimate business purpose, and the breach is malicious and exclusively directed to the injury and damage of TRC.

62. As a result of Envacon’s and Bozman’s tortious interference with TRC’s contractual relationship with JKKB under the Exclusive License, TRC is entitled to recover from Envacon and Bozman for damages incurred by TRC resulting therefrom in an amount to be proven at trial.

**COUNT IV – DAMAGES RESULTING FROM A CIVIL CONSPIRACY**

63. Plaintiff repeats and incorporates by reference each preceding paragraph as if fully set forth herein.

64. Upon information and belief, Defendants have conspired to tortiously interfere with TRC's contractual relationship with JKKB under the Exclusive License, and wrongful acts taken in furtherance of the common design include JKKB's grant to Envacon of an unauthorized license to manufacture Shut Off Valves, Envacon's manufacture of Shut Off Valves, and Bozman's personal participation therein.

65. Upon information and belief, the object of Defendants' conspiracy was to interfere with TRC's contractual relationship with JKKB under the Exclusive License, and TRC is entitled to recover from Defendants for damages incurred by TRC as a result thereof in an amount to be proven at trial.

**WHEREFORE**, Plaintiff, Tyler Research Corporation, prays that this Court enter:

A. A judgment stating that Defendants have infringed TRC's exclusive manufacturing rights under the '053 Patent;

B. A permanent injunction prohibiting Defendants from further acts of infringement of TRC's exclusive manufacturing rights under the '053 Patent;

C. A judgment and order requiring Defendants to pay TRC its damages, costs, and expenses, and prejudgment and post-judgment interest, for infringement of TRC's exclusive manufacturing rights under the '053 Patent;

D. A judgment and order requiring JKKB to pay TRC its damages, costs, and expenses, and prejudgment and post-judgment interest, for JKKB's breach of the Exclusive License.

E. A judgment and order requiring Envacon and Kieran Bozman to pay Plaintiff its damages, costs, and expenses, and prejudgment and post-judgment interest, for tortious interference with Plaintiff's contractual relationship with JKKB under the Exclusive License;

F. A judgment and order requiring Defendants to pay Plaintiff its damages, costs, and expenses, and prejudgment and post-judgment interest, for conspiring to tortiously interfere with Plaintiff's contractual relationship with JKKB under the Exclusive License;

G. An award of such other and further relief that the Court may deem just and proper.

Respectfully submitted,

Dated: May 3, 2019

GORDON & REES,
SCULLY, MANSUKHANI LLP

/s/Joshua R. Slavitt
Joshua R. Slavitt (Admitted *pro hac vice*)
1717 Arch Street, Suite 610
Philadelphia, PA 19103
(215) 717-4025
jslavitt@grsm.com

**CERTIFICATE OF SERVICE**

I, Joshua R. Slavitt, hereby certify that on the date set forth below, I electronically filed Plaintiff's First Amended Complaint with the Clerk of the Court using the CM/ECF system, and a true and correct copy of the foregoing pleading was forwarded by electronic CM/ECF notification to all attorneys of record.

Dated: May 3, 2019 By: /s/ Joshua R. Slavitt
Joshua R. Slavitt