UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | |
|---|---|
| TYLER RESEARCH CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>ENVACON, INC., KIERAN BOZMAN, and JKKB HOLDINGS CORPORATION,<br><br>Defendants. | CAUSE NO.: 4:19-CV-10-TLS-JEM |

**OPINION AND ORDER**

This matter is before the Court on the Defendants' Motion to Dismiss Complaint Pursuant to Fed. R. Civ. P. Rule 12(b)(1) and Rule 12(b)(6) [ECF No. 15], filed on March 29, 2019, the Defendants' Motion to Dismiss First Amended Complaint Pursuant to Fed. R. Civ. P. Rule 12(b)(1) and Rule 12(b)(6) [ECF No. 25], filed on June 14, 2019, and the Defendants' Motion to Dismiss First Amended Complaint Pursuant to Forum Non-Conveniens [ECF No. 27], filed on June 14, 2019. In this Opinion and Order, the Court will only address the arguments related to the Defendants' Motion to Dismiss First Amended Complaint Pursuant to Forum Non-Conveniens [ECF No. 27]. For the reasons set forth below, the motion is granted, and the case is dismissed without prejudice.

**BACKGROUND**

This is a case involving an alleged infringement of United States Patent No. 6,273,053 ("the '053 Patent") concerning certain "Shut Off Valves," as described in the Plaintiff's First Amended Complaint. The Plaintiff, a Pennsylvania Corporation having its principal place of

business in Edmonton, Alberta, Canada, alleges that, on November 11, 1999, it entered into an Exclusive License Agreement with Defendant Kieran Bozman and Joseph Krepela, under which it would be granted the exclusive right to manufacture the Shut Off Valves. First Am. Compl. ¶¶ 2, 16, ECF No. 22. The exclusive right contained no geographical limitations and provided that the right to manufacture "shall be in force so long as any patent rights of the Licensors in reference to the Shut Off Valves design and development pursuant to the terms of this Agreement, are still subsisting." Exclusive License Agreement ¶ 6, Ex. 2, ECF No. 22-2.

On March 2, 2000, Defendant Bozman and Joseph Krepela assigned their rights in the Shut Off Valves to Defendant JKKB Holdings Corporation ("JKKB"), and on March 3, 2000, Defendant JKKB filed for patent protection for the Shut Off Valves in the United States and Canada. First Am. Compl. ¶¶ 23, 24. On August 14, 2001, the United States Patent and Trademark Office issued United States Patent No. 6,273,053, entitled "Engine Shutdown Valves" to Defendant JKKB. *Id.* at ¶ 26. From 1999 until 2004, the Plaintiff exclusively manufactured the Shut Off Valves. *Id.* at ¶ 29. During this time, Defendant Envacon Inc. ("Envacon") marketed and sold the Shut off Valves. *Id.* at ¶ 30.

In 2004, the Plaintiff, pursuant to the Exclusive License Agreement, outsourced some of the manufacturing work regarding the Shut Off Valves to Defendant Envacon, which operated under the supervision of and out of the same premises as the Plaintiff in Alberta, Canada. *Id.* at ¶¶ 31–32. However, on April 16, 2011, Defendant Envacon abandoned the premises without notice to the Plaintiff. *Id.* at ¶ 35. Despite leaving the premises and the Plaintiff's supervision, Defendant Envacon continued to manufacture the Shut Off Valves. *Id.* at ¶¶ 36–39. The Plaintiff alleges that the three Defendants are related and conspired together because Defendant JKKB

2

owns 50% of the shares of Defendant Envacon and Defendant Bozman indirectly owns 90% of the Shares of Defendant JKKB. *Id.* ¶¶ 3–6, 40–45.

On February 5, 2019, the Plaintiff filed a Complaint [ECF No. 1] in which it alleges that the Defendants conspired to deprive it of its exclusive manufacturing rights under the Exclusive License Agreement. On May 3, 2019, the Plaintiff filed its First Amended Complaint [ECF No. 22]. The First Amended Complaint contains four counts: Count I – Patent Infringement, Count II – Breach of Contract, Count III – Tortious Interference, and Count IV – Damages Resulting from a Civil Conspiracy. The Defendant, on June 14, 2019, filed a Motion to Dismiss First Amended Complaint Pursuant to Forum Non-Conveniens [ECF No. 27]. The Court, having reviewed the Motion to Dismiss First Amended Complaint Pursuant to Forum Non-Conveniens [ECF No. 27] and all related filings, is prepared to rule on this matter.

## ANALYSIS

"The common law doctrine of *forum non conveniens* allows a federal district court to dismiss a suit over which it would normally have jurisdiction in order to best serve the convenience of the parties and the ends of justice." *Stroitelstvo Bulgaria Ltd. v. Bulgarian-American Enter. Fund*, 589 F.3d 417, 421 (7th Cir. 2009) (citing *Clerides v. Boeing Co.*, 534 F.3d 623, 627–28 (7th Cir. 2008)). "[A] district court may dismiss a case on forum non conveniens grounds when it determines that there are 'strong reasons for believing it should be litigated in the courts of another, normally a foreign, jurisdiction.'" *Deb v. SIRVA, Inc.*, 832 F.3d 800, 805 (7th Cir. 2016) (quoting *Fischer v. Magyar Allamvasutak Zrt.*, 777 F.3d 847, 866 (7th Cir. 2015)). It is well established that the "threshold requirement for any *forum non conveniens* dismissal is the existence of an alternative forum that is both 'available' and 'adequate.'" *Stroitelstvo Bulgaria Ltd.*, 589 F.3d at 421 (citing *Kamel v. Hill-Rom Co., Inc.*, 108 F.3d 799,

3

802 (7th Cir. 1997)). Even if an alternative forum exists, "the district court should consider whether a *forum non conveniens* dismissal would serve the private interests of the parties and the public interests of the alternative forums." *Id.* at 424 (citing *Kamel*, 108 F.3d at 803).

The Defendants have asserted that the Plaintiff's First Amended Complaint should be dismissed on a theory of forum non conveniens. The Court agrees. In the instant case, the Defendants argue that Canada is an alternative forum and the interests of all involved would be best served by continuing the lawsuit in a Canadian court. The Plaintiff presents four arguments in opposition to the Defendants' Motion to Dismiss First Amended Complaint Pursuant to Forum Non-Conveniens. First, the Plaintiff argues that the Defendants' Motion does not comply with the Local Rules. Second, the Plaintiff argues that the Defendants have waived their right to invoke the doctrine of forum non conveniens. Third, the Plaintiff argues that the Northern District of Indiana is a proper forum. Finally, the Plaintiff argues that Canada is not an adequate forum. The Court will first address the Plaintiff's arguments, then assess the merits of the Defendants' Motion.

## I.     The Defendants Did Not Violate the Local Rules

On June 14, 2019, the Defendants filed both their Motion to Dismiss First Amended Complaint Pursuant to Fed. R. Civ. P. Rule 12(b)(1) and Rule 12(b)(6) [ECF No. 25] and their Motion to Dismiss First Amended Complaint Pursuant to Form Non-Conveniens [ECF No. 27]. The Plaintiff argues that the Defendants filed their motions in this manner to avoid complying with Local Rule 7-1(e), which provides that supporting briefs ordinarily must not exceed twenty-five pages. *See* N.D. Ind. L.R. 7-1(e).

Seeking permission to file an oversized brief "is not a mere a technicality to be overlooked or indulged by the Court," and "[filings] that do not conform with the local rules may

4

be stricken at the discretion of the court." *Goltz v. University of Notre Dame du Lac*, 177 F.R.D. 638, 640, 642 (N.D. Ind. 1997) (citing cases). In the instant case, the Court in not convinced that the Defendants filed two motions to circumvent the Local Rules. Rather, it appears that the Defendants prepared two self-standing motions and filed them separately because the motions are procedurally different. Indeed, the Defendants' first motion asserts Rule 12 defenses, whereas their second motion invokes the doctrine of forum non conveniens. Of course, the Court would have permitted the Defendants to submit their filings as one motion (and, if requested, the Court would have granted permission to file an oversized brief); however, there is nothing procedurally incorrect about filing two separate motions. As no violation of the Local Rules has occurred, the Court will not strike the Defendants' motion and the Court must continue its analysis.

## II.     The Defendants Did Not Waive Their Right to Invoke Forum Non Conveniens

Prior to filing their Motion to Dismiss First Amended Complaint Pursuant to Form Non-Conveniens, the Defendants filed two other motions in this Court. The Plaintiff argues that, because the Defendants did not raise arguments concerning forum non conveniens in these filings, the Defendants have waived their right to invoke the doctrine. The Plaintiff is mistaken.

The Plaintiff's argument relies on Federal Rule of Civil Procedure 12(g), which provides that "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). The Advisory Committee Note further provides:

> Subdivision (g) has forbidden a defendant who makes a preanswer motion under this rule from making a further motion presenting any defense or objection which was available to him at the time he made the first motion and which he could have included, but did not in fact include therein. Thus if the defendant moves before

> answer to dismiss the complaint for failure to state a claim, he is barred from making a further motion presenting the defense of improper venue, if that defense was available to him when he made his original motion.

Fed. R. Civ. P. 12(g) advisory committee's note to 1966 amendment.

Federal Rule 12(h) governs when a party waives a particular defense. This rule provides that "[a] party waives any defense listed in Rule 12(b)(2)–(5) by: (A) omitting it from a motion in the circumstances described in Rule 12(g)(2)." Fed. R. Civ. P. 12(h). Notably, the doctrine of forum non conveniens is not among the Rule 12(b) defenses. *See* Fed. R. Civ. P. 12(b).

The Plaintiff's argument attempts to equate the doctrine of forum non conveniens to a Rule 12(b)(3) defense for improper venue. Despite both addressing where the case will proceed, the defense of improper venue and the doctrine of forum non conveniens are not the same. The defense for improper venue concerns whether an action may be filed in a particular district. *See Westfield Ins. Co. v. Hill*, No. 2:10-CV-123, 2010 WL 1996868, at *2 (N.D. Ind. May 17, 2010) (citing *Norkol/Fibercore, Inc. v. Gubb*, 279 F. Supp. 2d 993, 998 (E.D. Wis. 2003)). Alternatively, a motion premised on the doctrine of forum non conveniens does not question whether an action *can* proceed in a venue, rather it questions if it *should* proceed in a venue. Indeed, "[m]ost federal courts are clear that a motion to dismiss on the basis of forum non conveniens can be granted only if the federal court in which the action was brought has both subject matter jurisdiction and personal jurisdiction and also is *a proper venue*." 14D Fed. Prac. & Proc. Juris. § 3828 (4th ed. 2020) (citing cases) (emphasis added).

The Plaintiff contends that "dismissal on *forum non conveniens* grounds is considered a species of the defense of improper venue, which appears as Rule 12(b)(3)." Pl.'s Mem. 2, ECF No. 32. To support this contention, the Plaintiff cites the Seventh Circuit's opinion in *Deb v. SIRVA, Inc.* In *Deb*, the Seventh Circuit explained that "[t]he defendants filed their motion to

6

dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (failure to state a claim upon which relief can be granted), 12(b)(7) (failure to join a party), and 12(b)(3) (improper venue)," and that "[s]ubsumed within this last category were the common law principles of forum non conveniens and abstention." 832 F.3d 800, 805 (7th Cir. 2016). The Plaintiff claims this quotation supports its argument; however, this passage of the opinion is meant only to summarize the defendants' motion and not to equate the doctrine of forum non conveniens to a defense for improper venue.

"[T]here generally is no time limit on when a motion to dismiss for forum non conveniens must be made," which "distinguishes forum non conveniens from the motion to dismiss for improper venue, to which the strict timing requirement of Civil Rule 12(h) apply." 14D Fed. Prac. & Proc. Juris. § 3828 (4th ed. 2020) (citing cases). Regardless, a district court may deny a motion based on the doctrine of forum non conveniens if substantial progress has already been made in the litigation. *See Zelinski v. Columbia 300, Inc.*, 335 F.3d 633, 643 (7th Cir. 2003) ("Although the state court action was filed in March 2001, Columbia did not file its forum non conveniens motion until August 2001. At that time, trial was scheduled less than a month away. The district court did not abuse its discretion in denying the motion."). Given that there is no time limit to file a motion to dismiss for forum non conveniens and that no substantial progress has been made in this litigation, the Court concludes that the Defendants' motion is timely.

**III.     Whether the Northern District of Indiana Is a Proper Forum Is Irrelevant**

In its response brief, the Plaintiff, on several occasions argues that venue is proper in the Northern District of Indiana. Specifically, the Plaintiff asserts that, because the Defendants are not United States citizens or entities, venue is proper in any district. Although the law cited by the Plaintiff is correct, whether this forum is proper is irrelevant to the Court's determination of

7

whether the doctrine of forum non conveniens should be invoked. As previously explained, venue must be proper for the Court to consider a motion to dismiss for forum non conveniens because, otherwise, the Court would simply dismiss the case for improper venue. As such, this argument is irrelevant and does not support the denial of the Defendants' motion.

### IV. Canada Is an Available and Adequate Forum

As previously explained, the "threshold requirement for any *forum non conveniens* dismissal is the existence of an alternative forum that is both 'available' and 'adequate.'" *Stroitelstvo Bulgaria Ltd.*, 589 F.3d at 421 (citing *Kamel*, 108 F.3d at 802). Based on the parties' filings, Canada is both an available and an adequate forum.

The Plaintiff does not dispute that Canada is an available forum, and to do so would be futile. "An alternative forum is 'available' if all of the parties are amenable to process and within the forum's jurisdiction." *Id.* (citing *Kamel*, 108 F.3d at 803). Defendants Envacon and JKKB are Canadian entities, Defendant Bozman resides in Canada, and the Plaintiff's primary place of business is in Canada. First Am. Compl. ¶¶ 2–6. As such, certain Canadian courts would have jurisdiction over the parties, and the parties would be subject to answer to such a court. In fact, the Plaintiff has already brought and discontinued an action against the Defendants in a Canadian court. Decl. Kieran Bozman, Ex. B, ECF No. 17-1. For these reasons, the Court concludes that Canada is an available forum.

The Plaintiff, however, disputes that Canada is an adequate forum. In its response to the Defendants' Motion, the Plaintiff contends that Canada is not an adequate forum because the "Defendants fail to explain – indeed, they are unable to explain – how a forum located in Alberta, Canada could possibility adjudicate [the Plaintiff's] claim for infringement of a *United States* patent." Pl.'s Mem. 5. However, the Seventh Circuit has repeatedly held that this is not the

8

standard used to determine whether a particular forum is adequate. "An 'alternative forum is adequate when the parties will not be deprived of all remedies or treated unfairly.'" *Fischer*, 777 F.3d at 867 (quoting *Kamel*, 108 F.3d at 803). It is not enough that proceeding in the foreign forum will "lead to a change in applicable law unfavorable to the plaintiff." *Id.* (quoting *In re Factor VIII or IX Concentrate*, 484 F.3d 951, 956 (7th Cir. 2007)). "Rather, only if 'the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all' should the unfavorable change be given substantial—or even dispositive—weight." *Id.* (quoting *In re Factor VIII or IX Concentrate*, 484 F.3d at 956) (internal quotation marks omitted).

The Court agrees with the Plaintiff's contention; it is true that a Canadian court is unlikely to adjudicate a claim for the infringement of a United States patent. However, the Plaintiff could still bring a claim for the infringement of the Shut Off Valve's Canadian patent in a Canadian court. Furthermore, a Canadian court would certainly adjudicate the Plaintiff's breach of contract claim, which alone would remedy the alleged wrong. *See Stroitelstvo Bulgaria Ltd.*, 589 F.3d 417, 422–23; *Kamel*, 108 F.3d at 803.[1] Finally, the Plaintiff does not contend, and the Court has no reason to believe, that any of the parties would be treated unfairly if they were to proceed in Canada. As such, the Court concludes that Canada is an adequate forum.

---

1 The Court notes that the Defendants, in their Motion to Dismiss First Amended Complaint Pursuant to Fed. R. Civ. P Rule 12(b)(1) and Rule 12(b)(6) [ECF No. 25], argue that the Plaintiff's breach of contract claim would be barred based on the Canadian statute of limitations. The Plaintiff does not argue that the Canadian forum is inadequate because the claim is barred by the statute of limitations. The Court notes, however, that even if the Defendant's contention were true, it would not affect the Court's analysis because a Plaintiff cannot defeat dismissal under the doctrine of forum non conveniens "by waiting until the statute of limitations in the alternative forum has expired and then filing suit in his preferred forum (with the longer limitations period) and arguing that the alternative forum is inadequate." *Chang v. Baxter Healthcare Corp.*, 599 F.3d 728, 736 (7th Cir. 2010) (citing *Compania Naviera Joanna SA v. Koninklijke Boskalis Westminster NV*, 569 F.3d 189, 202–03 (4th Cir. 2009); *In re Bridgestone/Firestone, Inc.*, 420 F.3d 702, 705–07 (7th Cir. 2005)). In the instant case, the Plaintiff filed a claim in a Canadian Court, dismissed the claim, and refiled in a United States Court. Decl. Kieran Bozman Ex. B, ECF No. 17-1. Accordingly, the Plaintiff cannot argue that their decision to delay filing and dismiss their Canadian claim weighs against the invocation of the forum non conveniens doctrine.

### V. The Interests of Everyone Involved Are Best Served by Continuing This Lawsuit in Canada

After determining that an alternative forum is available and adequate, a court considering whether the invocation of the doctrine of forum non conveniens is appropriate must "balance the private interests of the parties and the public interests of the alternative forums and find that those balances favor a different forum." *Fischer*, 777 F.3d at 868 (citing *Stroitelstvo*, 589 F.3d at 424; *Kamel*, 108 F.3d at 803).

#### A.   Private Interests

When evaluating the private interest of the parties, the Court considers the: "(1) relative ease of access to sources of proof; (2) availability of compulsory process and costs for attendance of witnesses; (3) possibility of view of premises, if appropriate; and (4) other practical issues, including ease of enforcement of any ultimate judgment." *Id.* (quoting *In re Factor VIII or IX Concentrate*, 484 F.3d at 958). When applied to this case, each of the above factors suggests that the private interests of the parties will be best served by continuing this litigation in Canada.

In its brief, the Plaintiff does not argue why its or the Defendants' interests would be best served by litigating this matter in the Northern District of Indiana. Alternatively, the Defendants argue that the "private interests overwhelmingly favor Canada as the appropriate forum" because

> there is no dispute that all of the witnesses and documentary evidence are located in Canada because all of the parties are Canadian corporations or citizens. In contrast, none of the witnesses or evidence are available in Indiana, and this court cannot compel any witnesses to travel to Indiana for trial. Since Envacon manufactures Shutoff Valves exclusively in Alberta, Canada, a site visit to the manufacturing facility would not be possible. Finally, practical problems with litigating this case in this district are pervasive where this Court would be required to apply Canadian law to an exclusive manufacturing agreement that was signed in Canada,

10

> by Canadian entities and individuals, and involving a product that is manufactured exclusively in Canada.

Defs.' Mem. Supp. 4, ECF No. 28. The Defendants' argument draws into question the most important allegation in the Plaintiff's First Amended Complaint: that the Shut Off Valves were manufactured in this district. Of course, the Plaintiff alleges throughout its First Amended Complaint that the Defendants manufactured the Shut Off Valves, the conduct giving rise to this lawsuit, in this district. However, in Paragraph 41 of its First Amended Complaint the Plaintiff alleges that:

> While Envacon separately manufactures both Shut Off Valves and remotely mounted latches, the incorporation and installation by Envacon (with the personal participation of Bozman) of Shut Off Valves having remotely mounted latches in customers' products in Indiana (and elsewhere) constitutes "manufacture" of Shut Off Valves falling within the scope of Claims 4 and 14 of the '053 Patent.

First Am. Compl. ¶ 41.

The Plaintiff's characterization is problematic, as the Plaintiff is not permitted to redefine commonly used words to bolster its claims. The Plaintiff, in this paragraph, seemingly attempts to equate the manufacture of Shut Off Valves to the installation of Shut Off Valves. Notably, Paragraph 41 of the Plaintiff's First Amended Complaint cites the Declaration of Kieran Bozman [ECF No. 17–1], which further illustrates that the Plaintiff is attempting to mischaracterize the Defendants' conduct in Indiana for the purposes of persuading the Court to keep the lawsuit in this district. In Defendant Bozman's Declaration, he represents, among other things, that:

> 11. Envacon has never manufactured the Shut Off Valves anywhere in the United States.
> 12. Envacon has been manufacturing the Shut Off Valves exclusively in Edmonton, AB, Canada since 2000.

11

       13.    [Defendant Bozman] has never personally participated in the manufacture of the Shut Off Valves anywhere in the United States.

       14.    Envacon has sold the Shut Off Valves to customers in the United States and has assisted customers in the United Sates at times, including in Indiana, in incorporating the Shut Off Valves into the customer's products.

Decl. Kieran Bozman ¶¶ 11–14, ECF No. 17-1.[2]

Based on Paragraph 41 of the Plaintiff's First Amended Complaint and Defendant Bozman's declaration, it is apparent that the Plaintiff is mischaracterizing the Defendants' conduct in this district. While the distinction between whether the Defendants manufactured or installed the Shut Off Valves in this district may not be important when determining whether the Court has jurisdiction or if venue is proper, it is critical to the Court's forum non conveniens analysis.[3]

Based on the facts and details contained in the motions and memoranda provided to the Court, the parties' access to sources of proof would be limited, as both the documentary evidence and witnesses are located in Canada. Moreover, the Court has no subpoena power over the documentary evidence and witnesses, as they are located outside of the Court's jurisdiction. *See In re Petition of Boehringer Ingelheim Pharms., Inc.*, 745 F.3d 216, 218 (7th Cir. 2014) ("And

---

[2] The Court notes that it may look beyond the pleadings to determine whether the Defendants have met the heavy burden under the doctrine of forum non conveniens. *See Deb*, 832 F.3d at 810.

[3] This distinction is also important when assessing the validity of the Plaintiff's patent infringement claim. Pursuant to 35 U.S.C. § 271(a), "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." Notably, the Exclusive License Agreement only grants the Plaintiff the exclusive right to manufacture the Shut Off Vales. Assuming that the Exclusive License Agreement allows the Plaintiff to bring a patent infringement claim against the Defendants, the claim would be limited to "mak[ing] . . . [the] patented invention within the United States," 35 U.S.C. § 271, as the Plaintiff does not hold the remaining patent rights. Accordingly, if the Defendants did not manufacture the Shut Off Valves in the United States, the Plaintiff cannot bring a United States patent claim against them. *See Microsoft Corp. v. AT&T Corp.*, 550 U.S. 441, 441 (2007) ("It is the general rule under United States patent law that no infringement occurs when a patented product is made and sold in another country."). The Court, however, need not address whether the Plaintiff's patent infringement claim is valid to make its ruling on the Defendants' Motion to Dismiss First Amended Complaint Pursuant to Forum Non-Conveniens [ECF No. 27].

foreigners who are not in the United States are beyond the subpoena power of our courts even if their testimony can't be obtained in admissible form otherwise." (citing *Relational, LLC v. Hodges*, 627 F.3d 668, 673 (7th Cir.2010))). Costs are an additional barrier, as any cooperating witnesses and the parties would have to travel from Edmonton, Alberta, to Hammond, Indiana, for trial. *See Stroitelstvo Bulgaria Ltd.*, 589 F.3d at 425 (citing *U.S.O. Corp. v. Mizuho Holding Co.*, 547 F.3d 749, 751 (7th Cir. 2008); *Clerides*, 534 F.3d at 629). In addition to the complications surrounding documentary evidence and witnesses, the Court also notes that an in-person view of the premises would be impossible; however, it is unlikely that such a visit would be necessary to resolve this dispute.

The fourth factor in the private interest analysis allows the Court to consider any other practical issues that would be created by allowing this case to continue in this forum. The parties raise no additional issues they wish the Court to consider. Although not an issue raised by the parties, the Court notes that the Plaintiff may experience difficulties in the future if it needs to enforce a judgment against the foreign Defendants. However, the Court is without sufficient information to determine whether the Plaintiff is certain to face such difficulties. As such, the Court does not include this consideration in its balancing test.

By considering each of the above described factors, the Court concludes that the private interests of the parties are best served by continuing this litigation in a Canadian court. Even if the Court were to accept the Plaintiff's characterization of the Defendants' conduct as "manufacturing" Shut Off Valves in this district, the Court would still reach this conclusion. The Plaintiff, in its Memorandum in Opposition to Defendants' Motion to Dismiss the First Amended Complaint Pursuant to *Forum Non Conveniens* [ECF No. 32], does not attempt to dispute the Defendants' assertion that all of the evidence and witnesses are located in Canada. Indeed, the

13

Plaintiff does not even suggest that any evidence or witnesses are located in this district. As such, the inconveniences described by the Defendants would still be present, thus leading the Court to the same conclusion.

### B. Public Interest

In addition to the private interests of the parties,

> [t]he court must also consider the public interest. Relevant public interest factors "include the administrative difficulties stemming from court congestion; the local interest in having localized disputes decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflicts of laws or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty."

*Fischer*, 777 F.3d at 868 (quoting *Stroitelstvo*, 589 F.3d at 425). The Defendants, correctly, point out that the public interest favors using a Canadian court to resolve this dispute. In fact, each of the above described factors weighs in favor of dismissing this case.

In this matter, Canada, not the Northern District of Indiana, has the public interest of having localized disputes decided at home. This is true because the parties are at home in Canada, as they are Canadian citizens and/or primarily conduct business in Canada, the contract between the parties was entered into and carried out in Canada, and the conduct giving rise to the dispute, the manufacture of Shut Off Valves, occurred in Canada. Of course, the United States has an interest in ensuring that United States patents are not infringed, but only when the infringing conduct occurs within the United States. *See* 35 U.S.C. § 271(a) ("Except as otherwise provided in this title, whoever without authority makes . . . any patented invention, within the United States . . . .").

14

Indeed, this dispute has little, if any, connection to the Northern District of Indiana. If this matter proceeded to trial, the Court would be unfairly burdening citizens residing in this district by requiring them to serve as jurors on a case that is almost entirely unrelated to this venue and their community. *See Stroitelstvo Bulgaria Ltd.*, 589 F.3d at 425 ("Since this loan is so unrelated to the local forum, calling Chicago-area citizens for jury duty on this case would be asking a lot." (citing *U.S.O. Corp.*, 547 F.3d at 755)). Additionally, while every court has administrative difficulties stemming from court congestion, it makes the most sense for courts to dismiss cases that have no connection to their district, instead of utilizing judicial resources to resolve disputes that would be more appropriately addressed by a different court.

Finally, if the Court were to resolve this dispute it would have to conduct a conflict of laws analysis and, likely, apply Canadian law. The Court notes that Counts II, III, and IV of the Plaintiff's First Amended Complaint do not involve federal law, as evidenced by the Plaintiff's jurisdictional statement. *See* First Am. Compl. ¶ 7 ("This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a), as well as § 1367(a)."). As federal law does not apply, the Court would have to determine what law is applicable. Although the Plaintiff has not identified what law it believes should be applied, the Defendants contend that Canadian law applies. Accordingly, the Court would have to conduct a conflict of laws analysis.

It is well established that "[a] Federal District Court exercising diversity jurisdiction must apply the substantive law of the State in which it sits," which necessarily means that "[t]he Court must also follow the choice-of-law rules of the forum State to determine which State's substantive law applies." *Bateman v. Cent. Foundry Div., Gen. Motors Corp.*, 822 F. Supp 556, 561 (S.D. Ind. 1992) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); 10A Charles Alan Wright, Arthur R. Miller & Mary Kay

15

Kane, Fed. Prac. & Proc. Civ. § 2712 (1983)). As such, Indiana choice-of-law rules would apply in this case. Indiana subscribes to the Second Restatement of Conflicts when determining what law applies to both tort and contract claims. *Bailey v. Skipperliner Indus.*, 278 F. Supp. 2d 945, 953–55 (N.D. Ind. 2003).

In regard to tort claims, "Indiana courts initially favor the law of the state in which a tort occurred." *Id.* at 954. For contract claims, Indiana applies "the law of the forum with the most intimate contacts with the facts." *General Motors Corp. v. Northrop Corp.*, 685 N.E.2d 127, 135 (Ind. Ct. App. 1997). To determine which forum has the most intimate contacts, courts may consider: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties." *Bailey*, 278 F. Supp. 2d at 953 (quoting Restatement (Second) of Conflict of Laws §§ 188 (1971)). Furthermore, "[i]f the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied." *Id.* (quoting Restatement (Second) of Conflict of Laws §§ 188 (1971)).

In Counts II, III, and IV, the Plaintiff raises tort and contract claims. As the activity giving rise to the Plaintiff's tort claims occurred in Canada, the Court would be required to apply Canadian law to resolve Counts III and IV.

Determining the law applicable to Count II is equally straightforward. The Defendant entities are all Canadian Corporations operating in Canada, Defendant Bozman is currently residing in Canada, and the Plaintiff's primary place of business is Canada. Decl. Kieran Bozman ¶¶ 2, 4; First Am. Compl. ¶¶ 2–6.[4]  The Plaintiff, in its complaint, indicates that it was

---

4 The Court notes that while the Plaintiff is incorporated in Pennsylvania, there does not appear to be any additional

performing under this contract at a facility in Alberta, Canada. First. Am. Compl. ¶¶ 29–32. Further, the Defendant represents, and the Plaintiff does not contend otherwise, that the parties contracted the agreement in Canada. Defs.' Mem. Supp. 3 The facts of this case are most intimately associated with Canada and have little connection to any other forum; therefore, Canadian law would apply.

The Court, based on this choice of law analysis, would be required to apply Canadian law to resolve almost all of the Plaintiff's claims, which supports the Defendants' argument for invoking the doctrine of forum non conveniens. *See U.S.O. Corp.*, 547 F.3d at 751 ("[T]he law applicable to the issues in the case is almost certainly Japanese law, with which American judges have little familiarity."). Based on this determination, and each of the above-described factors, the Court concludes that the public interest favors this dispute being resolved by a Canadian court.

Even if the Court were to, again, accept the Plaintiff's characterization of the Defendants' conduct as "manufacturing" the Shut off Valves in this district, the Court would not change its conclusion. Under such an assumption, the United States would also have an interest in resolving this dispute because the Plaintiff alleges that domestic conduct infringed a United States patent. Additionally, in such a scenario the Court could fairly call upon jurors in this district to resolve the dispute, as the jurors in this district do have an interest in the preservation of United States patents. However, even under such an assumption, the Court's conclusion that this dispute would require extensive application of Canadian laws would remain unchanged.[5]  Accordingly, the

---

connections to Pennsylvania.
5 If the Court were to accept the Plaintiff's characterization of the Defendants' conduct, its choice of law analysis would yield the same outcome. The Court's choice of law analysis and conclusion regarding the Plaintiff's contract claim would remain unchanged. However, the Court's analysis regarding the Plaintiff's tort claims would be different. Although Indiana law generally favors applying the law of the state in which the tort occurred; it turns to a

Court, under this assumption, would conclude that, at best, the United States and Canada have an equal interest in resolving this dispute, but because Canadian law must be extensively applied, the public interest still favors proceeding in a Canadian forum.

  C. *Balancing the Private and Public Interest*

  The Court notes that "[t]he doctrine of forum non conveniens . . . is an exceptional one that a court must use sparingly." *Deb*, 832 F.3d at 805 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 504, 509 (1947)). "The exceptional nature of a dismissal for forum non conveniens means that a defendant invoking it ordinarily bears a heavy burden in opposing the plaintiff's chosen forum." *Id.* at 806 (citing cases). "When a plaintiff's choice is not his home forum, however, the presumption in the plaintiff's favor 'applies with less force,' for the assumption that the chosen forum is appropriate is in such cases 'less reasonable.'" *Id.* (quoting *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007)). That is, "[i]f the plaintiff is suing far from home, it is less reasonable to assume that the forum is a convenient one . . . .[and t]he risk that the chosen forum really has little connection to the litigation is greater." *Id.* (quoting *U.S.O. Corp.*, 547 F.3d at 752).

  In the instant case, the Plaintiff is not at home in this forum. Furthermore, this district is hundreds of miles away from Pennsylvania, the state in which the Plaintiff is incorporated, and well over one-thousand miles away from Edmonton, Canada, the Plaintiff's principle place of

---

four-factor analysis when the location is unimportant to the action. *See Bailey*, 278 F. Supp. 2d at 954. A court may conclude that location is unimportant in cases where the conduct causing the harm has occurred in multiple locations. *See Hoffman v. Roberto*, 578 N.E.2d 701, 705 (Ind. Ct. App. 1991) ("Where the place of publication simultaneously occurs in more than one state, the place of the tort may become insignificant."). In such scenarios, Indiana Courts consider: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." *Bailey*, 278 F. Supp. 2d at 954 (citing Restatement (Second) of Conflict of Laws §§ 145 (1971)). In the instant case, factors (a) and (b) include, at least, Indiana and Canada. Factors (c) and (d), however, only include Canada. Even if location were unimportant, the Court would, based on these four factors, conclude that Canadian law should be applied to the Plaintiff's tort claims.

business. Accordingly, the Plaintiff's preference to litigate this matter in the Northern District of Indiana is afforded less weight.

The Court, based on the above analysis, concludes that both the public interest and private interest of the parties are best served by dismissing this case and allowing it to proceed in Canada. The Court notes that, although the burden lies with the Defendants, the Plaintiff has not identified a single advantage that could be obtained by resolving this dispute in the Northern District of Indiana. Meanwhile, the Defendants have demonstrated several inconveniences associated with allowing this matter to proceed, such that they have met their heavy burden under the doctrine of forum non conveniens. This may be the preferred forum of the Plaintiff, but why the Plaintiff has elected to proceed in the Northern District of Indiana is not apparent. Accordingly, the Court will grant the Defendants' request to invoke the doctrine of forum non conveniens and dismiss this case.

## CONCLUSION

For the reasons stated above, the Court GRANTS the Defendants' Motion to Dismiss First Amended Complaint Pursuant to Form Non-Conveniens [ECF No. 27]. The Court DENIES as moot the Defendants' Motion to Dismiss Complaint Pursuant to Fed. R. Civ. P. Rule 12(b)(1) and Rule 12(b)(6) [ECF No. 15] and the Defendants' Motion to Dismiss First Amended Complaint Pursuant to Fed. R. Civ. P. Rule 12(b)(1) and Rule 12(b)(6) [ECF No.25]. The Court DISMISSES this case without prejudice.

SO ORDERED on July 1, 2020.

s/ Theresa L. Springmann<br>
JUDGE THERESA L. SPRINGMANN<br>
UNITED STATES DISTRICT COURT